CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 16 2009

JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Criminal Action No. 3:08-cr-00022** |
| | ) | |
| **v.** | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| **KELVIN FREEMAN** | ) | **By: Norman K. Moon** |
| | ) | **United States District Judge** |

This is a motion under 28 U.S.C. § 2255 by Kelvin Freeman, a federal inmate proceeding pro se, challenging his guilty plea and conviction for conspiring to distribute cocaine and cocaine base. Freeman claims that his plea was not knowing and voluntary and that he was denied the effective assistance of counsel. The court finds that Freeman's guilty plea was knowing and voluntary, that he waived his right to collaterally attack his plea and conviction, and that his claims of ineffective assistance of counsel nevertheless lack merit. Accordingly, the court grants the United States' motion to dismiss Freeman's § 2255 motion.

**I.**

On June 11, 2008, Freeman was charged in an indictment, returned by a grand jury in the Western District of Virginia, with conspiring to possess with the intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846. On September 29, 2008, pursuant to a written plea agreement, Freeman pled guilty to the indictment. Under the terms of the plea agreement, the United States agreed, inter alia, to recommend a three-level reduction in the offense level for acceptance of responsibility; to stipulate to a drug weight of at least 1.5 kilograms of crack cocaine, but less than 4.5 kilograms[1]; to recommend a period of incarceration in the middle of the applicable guideline range; and to stipulate that there would be no gun enhancement for the purpose

[1]Freeman was indicted for conspiring to distribute over 50 grams or more of cocaine base and 5 or more kilograms of cocaine.

of guideline calculations[2]. In exchange for these concessions, Freeman waived, inter alia, his right to collaterally attack his conviction and sentence.

Freeman initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Freeman affirmed that he had read the plea agreement, that he had carefully reviewed every part of the agreement with his attorney, that he understood the agreement, and that he was voluntarily agreeing to its terms.

During his plea hearing, Freeman stated under oath that he had gone to junior college, that he was in good health, and that he was not under the influence of any medication or alcoholic beverage. The court established that Freeman was aware of the nature of the charges against him, that he understood the range of punishment that he faced, that he understood how the United States Sentencing Guidelines might apply in his case, and that he knew that he had the right to a jury trial. The court also established that Freeman was aware that he would be bound by his plea agreement, even if his sentence was more severe that he expected.

The court instructed Freeman's attorney to review the salient portions of the plea agreement that Freeman had reached with the United States. The court asked Freeman if he read and understood the agreement before he signed it. Freeman responded in the affirmative. The court then asked if the agreement described by his attorney was contrary to his own understanding of the agreement, to which Freeman responded, "[n]o, sir." The court also advised Freeman that his plea agreement stated that he was waiving his right to collaterally attack the judgment at some later date and asked Freeman if he was waiving that right voluntarily, to which Freeman responded, "[y]es, sir."

---

[2] The government reserved the right to argue that the presence, possession, or use of the firearm was something that the court could consider in determining the applicability of the "safety valve" provision set forth in U.S.S.G. § 5C1.2.

The court also specifically inquired as to whether Freeman was voluntarily pleading guilty. Freeman affirmed that he had discussed the plea agreement with his attorney before he signed it, and that no one had made any promises or induced him to plead guilty. Freeman also affirmed that he was "fully satisfied with the counsel, representation, and advice" that his attorney had provided.

After all of the court's questions, Freeman stated that he still wanted to plead guilty. The court ultimately accepted Freeman's plea and found that Freeman was "fully competent and capable of entering an informed plea; that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense."

On January 12, 2009, the court sentenced Freeman at the bottom of the applicable guideline range, to a total term of imprisonment of 135 months. Before the court pronounced the sentence, Freeman was given the opportunity to address the court. At that time, Freeman did not express any desire to withdraw from the plea agreement, or voice any complaints regarding the quality and effectiveness of his attorney's representation. Freeman did not appeal his conviction or sentence.

On February 10, 2009, Freeman filed the instant § 2255 motion, claiming that his plea was not knowing and voluntary and that counsel provided ineffective assistance. In support of his claim of ineffective assistance of counsel, Freeman claims that (1) counsel was "very difficult to reach" while Freeman was out on bond, but concedes that counsel "did keep in regular contact with [him]"; (2) counsel never traveled to Virginia to discuss the progress of the case with [him]," but concedes that they did speak on the phone; (3) counsel did not "thoroughly investigate and subpoena the information that [Freeman] provided [counsel]," specifically he "never followed up on" "information regarding the property that was seized during [his] arrest"; (4) counsel did not show Freeman the plea agreement until the day of the plea hearing and then rushed Freeman to sign it; and (5) counsel mailed Freeman the Presentence Investigative Report ("PSR"), but did not personally review the

document with him to "correct errors or address any concerns that [Freeman] may have had with its contents."

## II.

Freeman alleges that his plea was not voluntarily and knowingly made because he "did not have a reasonable amount of time to read and understand the consequences of [his] plea agreement"; he was "rushed" as he initialed each page of the plea agreement; and he "did not have the opportunity to ask questions or refute information" contained in the plea agreement. However, these claims contrast sharply with the statements Freeman made during his plea colloquy, when he affirmed that he completely understood the terms of the plea agreement including each waiver, that he was entering the plea knowingly and voluntarily, that he was completely and fully satisfied with his attorney's representation, and that he did not challenge the government's evidence against him.[3] The court took care to ensure that Freeman was entering his plea both knowingly and voluntarily by reviewing the provisions until the court was fully satisfied that Freeman understood. The court made findings on the record at the plea hearing that Freeman was competent to plead and that he voluntarily and knowingly entered his plea. These findings were not mere formalities but rather reflected the court's considered opinion that Freeman was in fact fully competent and that his plea was knowing and voluntary. Nothing that has followed has dispelled that conclusion. Accordingly, the court finds that Freeman's challenges to the validity of his plea have no merit and, therefore, dismisses his claim.

## III.

[3] "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977); and citing United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74).

Freeman raises several claims of ineffective assistance of counsel. However, Freeman knowingly and voluntarily waived his right to collaterally attack his plea and sentence and Freeman's claims of ineffective assistance claims fall within the scope of that waiver. Therefore, his claims of ineffective assistance of counsel must be dismissed.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). To be valid, "the record must show that the waiver was based upon a knowing and intelligent decision." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002) (internal quotation marks omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22; see also United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Lemaster, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy–specifically, whether the district court

questioned the defendant about the . . . waiver–the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal and § 2255 rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver. See Attar, 38 F.3d at 732; Lemaster, 403 F.3d at 220 n.2; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); Blick, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Freeman's guilty plea and waiver of collateral attack rights, the court must determine whether his claims falls within the scope of that waiver.

Here, the court has already determined that Freeman knowingly and voluntarily entered a valid guilty plea and the record fully establishes that Freeman also knowingly and voluntarily waived his right to collaterally attack his sentence, including any proceeding brought under § 2255. In his plea agreement, Freeman specifically agreed to "waive any right [he] may have to collaterally attack, in any future proceeding, any order issued in this matter . . . ." The language and meaning

of the collateral-attack waiver is clear and unmistakable, and both Freeman and his attorney represented by their signatures to the plea agreement that Freeman had been fully advised of, and understood, its terms. In his plea agreement, Freeman also agreed to "make known to the Court no later than at the time of sentencing any dissatisfaction or complaint [he] may have with [his] attorney's representation." Further, at his plea hearing, Freeman acknowledged that he was voluntarily waiving his right to collaterally attack his judgment and indicated that he was fully satisfied with the counsel, representation, and advice given to him in this case by his attorney. Accordingly, the court concludes that Freeman's waiver of his right to collaterally attack his conviction or sentence under § 2255 is valid and enforceable.

Finding that the waiver is valid, the court must now determine whether Freeman's claims are included within the scope of the waiver. None of Freeman's claims fall within the narrow class of claims that are outside the scope of an enforceable waiver. Accordingly, the court finds that Freeman's claims of ineffective assistance of counsel are not cognizable claims in a § 2255 motion, and, therefore, dismisses them.[4]

[4] Moreover, Freeman's claims of ineffective assistance also fail on the merits. To demonstrate ineffective assistance of counsel, a petitioner must first show deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-91 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011(1978). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance, that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. More critically here, a petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 53-57 (1985); Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hooper, 845 F.2d at 475; accord Hill, 474 U.S. at 59; and Fields, 956 F.2d at 1297. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins, 724 F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing

IV.

For the reasons stated above, the court will grant the United States' motion to dismiss Freeman's § 2255 motion.

**ENTER**: This 16th day of October, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

Strickland, 466 U.S. at 697). With regard to all of his ineffective assistance of counsel claims, Freeman does not allege that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. Accordingly, Freeman has not demonstrated prejudice as to his claims and, therefore, the court finds that his claims have no merit.